# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LAWRENCE PIMENTA,

       Petitioner,

vs.                                                   Civil No. 97-937 LH/WWD

CHARLES CRANDELL, Warden et al,

       Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1. THIS MATTER comes before the Court upon Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed July 11, 1997. Mr. Pimenta is currently incarcerated and is represented by the Federal Public Defender. In August 1994, Mr. Pimenta entered a plea of no contest to charges of embezzlement over $250.00 but less than $2500.00, larceny over $100.00 but less than $250.00, and Receiving (Disposing) Stolen Property over $100.00 but less than $250.00.[1] He is confined pursuant to the judgment, sentence and commitment of the Third Judicial District Court in Doña Ana County.

**Procedural History**

    2. The charges were based on Mr. Pimenta's unauthorized use of a car belonging to an elderly woman named Mrs. Shutt and an attempt to sell car repair tools which belonged to Mrs. Shutt and were kept in the trunk of her car. Mr. Pimenta was sentenced to eighteen months and

---

[1] The last two charges were lesser included offenses of Counts III and IV in the grand jury indictment (originally felonies), which also included a misdemeanor charge of embezzlement the state dropped as part of the plea agreement.

one year parole for Count I, 364 days for Count III and 364 days for Count IV, to run consecutively. The entire sentence was supsended on conditions of probation for a period of three and one-half years, on condition that he participate in and successfully complete the H.O.W. Foundation drug treatment program in Tulsa, Oklahoma. Ans., Ex. B.

      3. Under the Plea and Disposition Agreement, Petitioner waived any time limits for the filing of a supplemental criminal information as a prior felony conviction which he admitted pursuant to the plea agreement, and also as to two possible felony convictions in Florida that could be used against him for sentence enhancement purposes. Ans., Ex.E. In turn, the state agreed not to file any supplemental criminal informations for the prior felony convictions for the purpose of enhancing Mr. Pimenta's sentence, on the condition that probation was not revoked. Ex. E, ¶ 2.

      4. In December 1984, Petitioner, after having been unsuccessfully discharged from the H.O.W. treatment program, requested a modification of his judgment and sentence to place him on unsupervised probation.[2] The state court denied his motion. Ans., Ex. H.

      5. In May 1995, on a motion from the state to revoke Petitioner's probation, the state court continued Mr. Pimenta's probation on the same conditions previously imposed by the judgment and sentence. See Ans., Exs. I, J.

---

[2] There is a dispute as to why Petitioner was discharged. Ans., Ex. G, ¶ 4. However, letters from the H.O.W. Foundation to Mr. Pimenta's probation officer, as well as reports from his probation officer indicate that after being at the treatment center three months, he was discharged for "not following the rules, disruptive [sic] to others, and continuously griping about being here." Ans., Ex. I (attachments). Petitioner had not contacted his probation officer prior to his discharge.

6. The following month, the state prosecutor filed a second petition to revoke probation because he failed to participate and successfully complete the H.O.W. treatment program and also filed an Amended Supplemental Criminal Information to invoke the eight-year habitual offender sentence enhancement. Ans., Exs. K, L. In October 1995, Mr. Pimenta filed a motion to withdraw his plea.

7. After a hearing in November 1995 on Petitioner's motion to withdraw his plea, the state court entered an order denying the motion and also revoking his probation. The court further found that Petitioner was a habitual offender with three prior felony convictions and increased his sentence by eight years as required by statute. Ans., Ex. A.

8. Petitioner alleges three grounds for relief:

   1) Petitioner was denied his Sixth Amendment right to effective assistance of counsel;

   2) Petitioner's guilty plea violated due process because it had no factual basis and the plea was invalid due to ineffective assistance of counsel because defense counsel unreasonably failed to discover and inform him that there was no factual basis for his plea; and

   3) Petitioner was denied due process because the court sentenced petitioner to an habitual offender sentence after he had completed the portion of his sentence that was attributable to the felony to which he pled.

**Claims One and Two - Ineffective Assistance of Counsel and Due Process**

9. Because claims One and Two share the same allegations under different theories, I address them together. Under the ineffective assistance claim, Mr. Pimenta claims that counsel's failure to investigate would have revealed that there was no factual basis for the felony charge of

3

embezzlement of Mrs. Shutt's car.[3] Petitioner further alleges that as a result of the plea lacking this factual basis, the plea is rendered invalid.

*Ineffective Assistance Claim*

10. In order for Petitioner to prevail on the ineffective assistance claim, he must satisfy a two-part test. Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998). First, he must show that "counsel's representation fell below an objective standard of reasonableness." Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To demonstrate that his attorney's performance fell below this standard, Mr. Pimenta must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

11. Second, even if he is able to satisfy the first prong of this test, he will not be entitled to relief unless he is also able to demonstrate that his counsel's performance prejudiced him, i.e., "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Petitioner's mere assertions that he would have opted for trial are not enough to satisfy the prejudice prong. Rather, he must show that, had he rejected the plea bargain, the outcome of the proceedings "likely would have changed,", i.e., that a jury would have acquitted him of the charges to which he pled. Miller v. Champion, 161 F.3d at 1256-57 (citing Hill, 474 U.S. at 59).

---

[3] Embezzlement consists of "the embezzling or converting to his own use of anything of value, with which he has been entrusted, with fraudulent intent to deprive the owner thereof." N.M.S.A. 1978 , § 30-16-8; see State v. Gonzales, 99 N.M. 734, 735 (Ct.App. 1983), cert. denied, 464 U.S. 855 (1983).

4

12. After a review of the state record and counsel's arguments, I conclude that Petitioner has not shown that defense counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 690; see also United States v. Rivera, 900 F.2d 1462, 1472 (10th Cir. 1990). This failure defeats the ineffectiveness claim. Miles v. Dorsey, 61 F.3d 1459, 1475 (10th Cir. 1995) (quoting Strickland, 466 U.S. at 700) (showing required as to both prongs).

13. Counsel owes a lesser duty to a client who pleads guilty than to a client who decides to go to trial, and in the former case need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious decision between accepting the prosecutor's offer and going to trial. Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991).

14. The evidence from the state record supports the state's position that there was a factual basis for the plea. See Findings, below. Other than bare assertions that there was no factual basis for the felony charge to which he pled, Petitioner does not explain how further investigation would have negated or attenuated the force of this evidence. Petitioner cites to no exculpatory evidence regarding the car embezzlement charge which, if known to him, would have convinced him to reject the plea agreement and would have provided a basis for a jury acquittal on the charge. Thus, there is no evidence that defense counsel acted in a deficient manner in having advised Mr. Pimenta to accept the plea agreement.

15. A plea of guilty and the ensuing conviction "comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." United States v. Broce, 488 U.S. 563 (1989). Although Petitioner makes much of his not seeing the

<mark>5</mark>

actual plea agreement document until the plea hearing, the terms of the agreement were discussed with him beforehand. Mot. to Withdraw Plea, 11/20/95, T.1, 45.0, 17.8, 20.2, 92.2. At his plea hearing, Mr. Pimenta conceded that the state could produce evidence to support the elements of the charges listed in the plea (felony embezzlement and two misdemeanors of larceny and receiving/disposing stolen property over $100.00 but less than $250.00, the latter two having been reduced from charges of felonies in the indictment). Plea Hrg, 8/22/94, Tape ("T") 4, 22.1.

16. The state described the elements of the felony embezzlement charge in open court with Petitioner present, and Petitioner stated that he had read the plea agreement carefully and understood its terms. T.4, 19.7. He stated that he understood the charges and his waiver of constitutional rights. T.4, 21.0, 22.6; Mot. to Withdraw Plea, 11/20/95, T.1, 58.8. He now wants to recant statements he made in open court which carry "a strong presumption of verity," despite the fact that there was substantial inducement at that time to enter the plea. Worthen v. Meachum, 842 F.2d 1179, 1185 (10th Cir. 1988)), overruled on other grounds, Coleman v. Thompson, 501 U.S. 722 (1991) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

17. Contrary to Petitioner's contention, he is not worse off for accepting the plea. Conviction at trial on the same charges would have included an additional misdemeanor as well as exposure to habitual offender enhancement for the felony charge. Thus, even assuming that counsel was deficient in representation (an assumption which is not supported by the state record), he has not established prejudice.

*Due Process Claim*

18. Mr. Pimenta's acceptance of the plea does not violate the Due Process Clause because evidence from the state court record shows sufficient factual basis for the sentencing

judge to have accepted the plea.  Plea Hrg., 8/22/94, T.4, 22-26.  See United States v. Barnhardt, 93 F.3d 706, 709 (10th Cir. 1996) (the court need make such inquiry "as shall satisfy it that there is a factual basis for the plea") (quoting Fed.R.Crim.P. 11(f)).

19. From the evidence in the police reports and grand jury proceeding, I find that it is *not* likely that a jury would have acquitted Petitioner of the charge of felony embezzlement of Mrs. Shutt's car, as Petitioner contends.  Mr. Pimenta observed Mrs. Shutt at a Diamond Shamrock with the hood up on her car.  He approached her and told her he could fix the oil leak and change the oil for $200.00.  Mrs. Shutt agreed.  Petitioner was to drop her off for her church meetings and fix her car at a friend's garage, then pick her up at her church when the meetings ended around 8:30 p.m.  Grand Jury ("GJ") Tape, 4/14/94, 24.1-29.1.

20. Petitioner accompanied Mrs. Shutt to the bank to withdraw money[4] and then to the auto parts store to buy what was needed to make the repairs.  According to her testimony before the grand jury, Mrs. Shutt stated that Mr. Pimenta had permission to use the car "just to drive to the garage [to fix the car] and drive back to pick me up."  GJ Tape, 36.5 -36.8; Police Rep't Narr., at 2, Pltff's Ex. B.  Mrs. Shutt never told Petitioner that there were tools in the trunk, or authorized him to go into the trunk.  Neither did she see any reason why he needed to go into the trunk in order to fix her car.  36.5-36.8.

21. After dropping Mrs. Shutt at church, Mr. Pimenta drove to the Mesilla Valley Mall area which was a considerable distance from the garage where he had told Mrs. Shutt he would be making the repairs, and purchased beer from a Walgreens store.  Narr. Supp. (Police Rep't), Ex.

---

[4] Mrs. Shutt paid Petitioner $40.00 which he said he needed up front to pay his friend for use of his garage, and spent approximately $30.00 for the auto parts.  The balance was to be paid after he fixed her car and picked her up from church.

7

B at 3. He then went into the trunk of the car, took out the set of car repair tools that were inside the trunk and sold a few of them to Michael Stutters, who also testified before the grand jury. GJ Tape, 10.0 - 19.9. The tools were estimated to be worth between $300.00 and $400.00 by both Stutters and Detective Jones, who was in charge of investigating the case. 19.9, 59.3-59.5.

22. Stutters alerted police about Mr. Pimenta's approaching him to sell the tools, and police picked up Petitioner on his way back to pick up Mrs. Shutt at her church. GJ Tape, 54.2. Police informed Mrs. Shutt that Petitioner had been trying to sell tools out of the trunk of her car. When further questioned about the tools taken from the trunk of the car, and about the beer found in the car, Petitioner said he had gone to "test drive" the car. GJ Tape, 55-56.

23. The car was apparently never fixed. Petitioner had returned the auto parts for cash. Supp. Narr., at 2 - 3, Pltff's Ex. B. After waiving his Miranda rights, Petitioner admitted to the police that he sold the tools to get some quick cash to support his $20.00 a day cocaine habit. Supp. Narr., at 2, Pltff' Ex. B; GJ Tape, 58.0.

24. Based on the above evidence from the state record, I find that Petitioner has not established either a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Nor has he shown the lack of a factual basis for his plea. Relief on the first two claims should be denied.

**Claim Three - Habitual Offender**

25. Petitioner also claims that he was denied due process because the court sentenced Petitioner to an habitual offender sentence after he had completed the portion of his sentence that was attributable to the felony to which he pled.

26. Petitioner received a sentence of 18 months for the felony embezzlement and 364 days for each of the two misdemeanor counts. See Ans., Exs. A, B. He received a total credit for time served of one year and 227 days. He argues that this time credit completely extinguishes any liability for the felony sought to be enhanced, treating the credit as time served for this felony sentence. He further contends that imposition of the habitual offender enhancement at that point affronts his expectation of finality in the sentence.

27. Petitioner was sentenced on Sept 9, 1994. Ans., Ex. B. Probation was revoked and the sentence was enhanced under the habitual offender statute on Nov. 29, 1995. Ans., Ex. A. The state court denied Petitioner relief on this issue, finding that he was still serving the underlying (suspended) sentence at the time the enhancement was imposed. Ans., Ex. S.

28. State court findings are entitled to deference by a federal court on habeas review. 28 U.S.C. § 2254(d), (e)(1). The state court findings in this case do not involve an "unreasonable application" of "clearly established federal law" which would lead to conclude that the state court findings should not be given deference. § 2254(d).

29. Notwithstanding the characterization of Petitioner's claim as a claim alleging a violation of a federal constitutional right, I find that this claim also fails as a due process challenge.[5] First, the enhancement was not arbitrarily imposed by state, but as a consequence of Petitioner's voluntary conduct in violating a condition which was attached to the imposition of the

---

[5] Respondents are correct that federal habeas corpus relief is not available for "errors of state law." Estelle v. McGuire, 502, U.S. 62, 67 (1991). However, erroneous interpretation of state law can violate due process when it expands criminal liability in a manner that is not reasonably foreseeable, Lopez v. McCotter, 875 F.2d 273 (10th Cir.), cert denied, 493 U.S. 996 (1989), or if it is inconsistent with the fundamentals of liberty and justice, Chavez v. Baker, 399 F.2d 943 (10th Cir. 1968), cert. denied, 394 U.S. 950 (1969).

habitual offender statute.  Cmp., e.g., State v. Gaddy, 110 N.M. 120, 122 (Ct.App. 1990) (court lacked jurisdiction to enhance sentence where it was determined defendant was a habitual offender after he has served underlying sentence and parole, even though the habitual proceedings were initiated prior to defendant's completion of the sentence).

30. At the plea hearing, the judge informed Mr. Pimenta that the primary reason he was suspending his sentence on the condition that he enter and complete a drug treatment program was due to the victim's (Mrs. Shutt's) desire to see him recover from his addiction problem and become a contributing member of society.  T.4, 50.5.  The judge also cautioned Petitioner about the risk of an additional eight years if he failed to complete the drug treatment program.  Petitioner stated that he understood the consequences of violating the terms of his probation.  T. 4, 8/22/94, 49.4 - 49/6.

31. Having violated the conditions of his probation and the terms of his plea agreement, Mr. Pimenta's own conduct triggered the enhancement.  He has, "by his own hand," defeated his expectation of finality.  See Montoya v. Shanks, 55 F.3d 1496, 1498 (10th Cir. 1995) (legitimate expectation of finality in sentence provided by plea agreement itself); cmp., United States v. Acuna-Diaz, unpubl. op., (Table, text in WL), 1996 WL 282262, 86 F.3d 1167 (10th Cir.) (violation of condition of supervised release triggers execution of original sentence, and was not a second sentence for the same crime).

32. I further find that the enhancement does not expand Petitioner's criminal liability, because New Mexico's habitual offender statute does not create a new offense and is part of a sentencing procedure, not a trial.  See Montoya v. Shanks, 55 F.3d 1496, 1498 (10th Cir. 1995).

Nor is the enhancement inconsistent with the fundamentals of liberty and justice. Relief should be denied on this claim.

*Request for Evidentiary Hearing*

33. An evidentiary hearing is not required, in light of the finding that Petitioner has not established prejudice by his acceptance of the plea. See Miller, 161 F.3d at 1255 (determining whether prejudice prong has been satisfied before considering whether to grant evidentiary hearing).

34. Petitioner also contends that he is entitled to an evidentiary hearing because his attempt to develop the factual basis of his claim was thwarted in state court when the state court judge limited a motion hearing to the voluntariness of the plea, and the defense attorney agreed to this. However, Petitioner made no effort to develop the factual issue as to the felony embezzlement count, but rather raised an issue regarding the value of the tools which were part of the other counts. Mot. to Withdraw Plea, T.1, 18-21.8.

35. The fact that the state court judge limited the issues to the voluntariness of the plea, T.1, 15.9-18.0, did not preclude Petitioner at that time from raising the issue of the factual basis for the felony embezzlement charge. Thus, because Mr. Pimenta failed to develop the factual basis of a claim in state court, he is barred from a hearing for this reason as well. See 28 U.S.C. § 2254(e)(2). He has not shown that there is a new rule of constitutional law which applies, or a factual predicate that could not have been previously discovered through the exercise of due diligence, either of which would be sufficient to overcome the bar.

36. In sum, Petitioner has not shown that his counsel's conduct was constitutionally deficient in failing to investigate, nor that he was prejudiced by accepting the plea agreement. A

11

review of the state record shows that there was a factual basis for his plea. Further, Petitioner was not denied due process in the imposition of the habitual offender statute.

## Recommendation

I recommend that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that this cause be dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE